Mr. Justice MacArthur
delivered thefopinion of the court:
The plaintiff is a member of the Metropolitan Police Force for the District of Columbia. It appears that the old corporation of the city of 'Washington, in the month-of April, 1871, passed an ordinance providing that from that date the compensation of each and every member of the Metropolitan Police Department should be increased at the rate of $10 per month. The Legislative Assembly, in the following August, extended this additional compensation to the members of the police '-force doing duty in any part of the District.
It further!Appears that on the 3d of March, 1875, Congress passed an act for the support of the District government, the fourteenth section of which is as follows:
*593 “That the Commissioners of the District, and their sue- . cessors in office, are hereby authorized to reduce, adjust, and equalize the pay or salaries of all officers or employees payable from the funds of the District government in whole or in ■part: Provided, however, That the aggregate sum of pay and salaries shall not be increased beyond the present aggregate-amount of pay and salaries.” (18 Stats., 505.)
Under this section the Commissioners claimed the power to disallow the payment of the $10 from the funds of the District, and they therefore made the order of March 9,1875, to take effect on the 1st of April following, deducting the same from each and every salary to which it had been added. In other words, they reduced .the pay of the members of the Metropolitan Police force to the sum established by the act of Congress, and the plaintiff brings this action to recover this $10 per month from that time until the institution of the suit. It is contended that the act of Congress of March 3, 1875,.authorizing the Commissioners to reduce salaries, applies only to the officers and salaries which have been created by the District government, and was never intended to give them any right to interfere with the compensation of persons employed in the police force; that they were not employees and officers of the District, but constituted a Federal force established by acts of Congress, governed by a board appointed by the President, and having their salaries fixed by congressional enactment.
It will be seen that the language of the act is quite corcbprehensive; for it is to reduce, adjust, and equalize the pay or salaries of all officers or employees payable from the fund's of the District government in whole or in part. It is. admitted that the expenses of this force, including the pay and salaries of its members, are defrayed in part from the funds of the District, and large sums are raised every year by boat taxation for that purpose. It will be seen by reference.-bisection 366 of the Eevised Statutes of the District of. Co.rlumbia what these salaries are as designated by Congress;, and by section 367 it is further provided, that “the Metro* *594 politan Police Force, its officers and clerks, shall receive a further compensation of 50 per centum upon their respective salaries, as provided for in this chapter, which further sum shall be paid by the cities of Washington and Georgetown and the district beyond the limits of said cities, in the proportion corresponding to the number of privates allotted severally to said precincts.” And the acts of July 81,1876, and March 6, 1877, appropriate for salaries and other necessary expenses of the Metropolitan Police $150,000, provided that a like sum shall concurrently be paid out of the treasury of the District of Columbia for the same purpose. The District being chargeable in part with the payment of these salaries, by a reasonable interpretation of the act of March 3, 1875, the Commissioners were fairly authorized to make the order reducing the salary of the plaintiff, in common with that of the other members of the force.
The learned counsel for the plaintiffs denies that the Metropolitan Police are among the “ officers or employees ” referred to in the statute, and claims that they are a Federal institution, and beyond the control of the District authorities. We are not disposed to ignore the facts upon which this argument is supported. We recognize that the Metropolitan force was established by an act of Congress in 1861, and that from that time to this it has been maintained by United States laws and appropriations, which partly defrayed its expenses. No doubt Congress intended that the force it created should be largely under its control. It was instituted at a time when the government was in very great peril, and required a body ■ of men at the capital upon whose fidelity it could depend for protection. This consideration ought not to divest it of .a municipal character. Its duty consisted principally in pre.serving peace and order in-the District; it was the only police force in the District. We know that all city governments possess the power to secure public safety and good order, and to establish and maintain a police force to that end. This is universally recognized as a municipal function, and undoubtedly entered into the municipal government of the *595 District. In Barnes v. The District of Columbia, 1 MacA., 822, this court decided that the late Board of Public Works was a body independent of the municipal government of the ■District, and that the District was not liable in an action at law for an injury occasioned by the negligence of said board. The Supreme Court of the United States reversed this decis- ■ ion, and held that the board was a part of the municipal corporation, and that the District was liable for their negligence. (1 Otto, 540.) Now, the act prescribing the powers of the Board of Public Works, in respect of the authority committed to it, was similar in principle to the Board of Health, the Fire Department, and the Board of Police. They were all created by Congress, and the members of the different bodies were appointed by the President and paid by the United States. But under the above decision they are undoubtedly to be considered as parts of the same municipal corporation for the government of the District of Columbia. Perhaps it would be difficult to define our municipal condition ; it is sui generis. Congress has the power of exclusive legislation over the District, and our statute law is now created by Federal legislation. It is, perhaps, not inapt to say that we bear the same relation to the general government that a city does to a State government in one of the States ; that all the officers for conducting our local affairs, whether appointed by the President, or created by Congress, or employed by the Commissioners, are municipal officers. They are like servants having two masters, federal and municipal. This appears to be the doctrine of the Supreme Court in the case of Barnes v. The District, where they remark: “A municipal corporation may act through its mayor, through its common council, or its legislative department by whatever name called; its superintendent of streets, commissioner of highways, or board of public works, provided the act is within the province committed to its charge. Nor can it in principle be of the slightest consequence by what means these officers are placed in this position; whether they are elected by the people of the municipality or appointed by the Presi *596 dent or a governor. The people are the recognized source of all authority, State and municipal; and to this authority it must come at last, whether immediately or by a circuitous process.” Although our condition is anomalous, and although we are without what is usually understood to be a corporation charter of a city, we are still in the category of a municipality, which can sue and be sued, and which is liable for the negligence of its officers, however appointed, and which is also liable on all their contracts officially entered into in conformity with the provisions of law.
It is, therefore, not disposing of the question before the court at all to argue, as was most ingeniously argued here, that because the Metropolitan Police Force was a Federal force, it was not subject to any general law of the description we are now considering. Besides, if it be true that the Metropolitan Police is a purely Federal force, and it has nothing about it pertaining to the municipality of the District of Columbia, what authority was there in the corporation of Washington, or in the Legislative Assembly of the District, to add ten dollars a month from the funds of the District to their compensation ?
The former governments which existed here would have no more right to confer upon them a gratuity of this kind than upon a clerk of this court, or upon the Cabinet officers of the United States, simply because they performed their duties in Washington. The argument goes too far. Besides, the additional ten dollars was cleai’ly a municipal act, if it had any validity at all; it was a mere bounty, and we cannot perceive why the law in question did not authorize the Commissioners to discontinue it. They reduced the salary to the sum established by Congress, leaving it precisely where Congress had left it, without any reduction from that amount. We are clearly of opinion that the argument we are now considering is entirely overcome by the suggestions already made.
We have seen that the expense of the Metropolitan Police is to be defrayed by the mutual appropriations by Congress, *597 and from the funds of the District. The statute is plain upon its face. Its express language is, “ all officers or employees payable from the funds of the District government in whole or in part.” The duty of these officers is confined locally to the District of Columbia, and are purely municipal in their nature. They are paid out of the treasuries of the District of Columbia and of the United States, and are, therefore, literally within the meaning of the law. We can reach no other conclusion than that, upon the admitted facts in the case, the plaintiff has no right of action, and there must be judgment in favor of defendant.
The court can only add that they are sensible of the meritorious service which is rendered to our citizens by the police force, but whether they are sufficiently compensated is not our duty to determine. It is simply our duty to pass upon the true meaning of a statute.